JAMES H. HOLL, III. CA Bar No. 177885
DANIEL J. GRIMM, *pro hac vice pending*
TIMOTHY J. MULREANY, *pro hac vice pending*
Attorneys for Plaintiff
U.S. COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000
jholl@cftc.gov
dgrimm@cftc.gov
tmulreany@cftc.gov

**THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

U.S. COMMODITY FUTURES TRADING COMMISION,

Plaintiff,

v.

CAPITOL EQUITY FX LLC, ROBERT LELAND JOHNSON IV, and MARISA ELENA JOHNSON,

Defendants.

Civil Action No.

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS**

Plaintiff, U.S. Commodity Futures Trading Commission ("Commission"), alleges as follows:

## I. SUMMARY

1. From at least May 2012, through May 2015 (the "Relevant Period"), Robert Leland Johnson IV ("Johnson") and Marisa E. Johnson ("Marisa Johnson"), individually and as principals and agents of Capitol Equity FX LLC ("Capitol Equity"), (collectively, "Defendants"), without being registered with the Commission, fraudulently solicited, and misappropriated, at least $1,735,750 in total funds from at least 10 individuals and entities ("pool participants") to participate in a purported hedge fund that operated as a pooled investment vehicle trading commodity futures and off-exchange leveraged or margined foreign currency exchange ("forex") contracts, in violation of the Commodity Exchange Act ("Act") and its implementing regulations ("Regulations").

2. To perpetuate and conceal their fraud, Defendants made material misrepresentations and omissions to pool participants and fabricated sham documents that falsely reflected significant trading returns and soaring account balances. In reality, Defendants did not trade commodity futures or forex for the benefit of pool participants, participants did not have their own accounts, no profits were generated, and Defendants misappropriated participants' funds for their own use.

3. Accordingly, pursuant to 7 U.S.C. §§ 2(c)(2)(C) and 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices, to

compel their compliance with the Act and the Regulations, and to enjoin them from engaging in any commodity-interest related activity, as set forth below. In addition, the Commission seeks civil monetary penalties for each violation of the Act and Regulations, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, an accounting, pre- and post-judgment interest, and such other relief as the Court deems necessary and appropriate.

4. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in this Complaint, and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

5. This Court possesses jurisdiction over this action pursuant to 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to seek injunctive and other relief against any person whenever it appears to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder, and 7 U.S.C. § 2(c)(2)(C) (2012), which provides the Commission with jurisdiction over the forex solicitations and transactions at issue in this action.

6. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) (2012), because Defendants reside in this District, Defendants transact or transacted business in this District, and certain transactions, acts, practices, and courses of

business alleged in this Complaint occurred, are occurring, or are about to occur within this District.

## III. PARTIES

7. Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations. The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

8. Defendant **Capitol Equity FX LLC** is a limited liability company organized in California on April 14, 2014, with its principal place of business located in Chino, California 91710. Capitol Equity has never been a United States financial institution, registered broker or dealer, insurance company, financial holding company, or investment bank holding company, or any associated person of such entities, as defined by the Act. On October 15, 2015, Capitol Equity filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Central District of California, *In re Capitol Equity FX LLC*, Case No. 6:15-bk-20057-MJ (Bankr. C.D. Cal. 2015). Capital Equity's bankruptcy case was closed, without discharge, on September 2, 2016. Capitol Equity has never been registered with the Commission in any capacity.

9. Defendant **Robert Leland Johnson IV** is an individual who resides in Chino, California. Johnson held himself out at various times as the "President," the "Investment Manager," and a "Managing Member" of Capitol Equity, as well as its

primary trader. Johnson's Capitol Equity email account signature identified him as the "President/CEO" of Capitol Equity. When Capitol Equity filed for Chapter 7 bankruptcy protection, Johnson held himself out as the "Managing Member" of Capitol Equity and submitted documents to the United States Bankruptcy Court for the Central District of California on that basis. On October 14, 2015, Johnson, jointly with Marisa Johnson, filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Central District of California, *In re Robert L Johnson and Marisa E Johnson*, Case No. 6:15-bk-20060-MJ (Bankr. C.D. Cal. 2015). Johnson's bankruptcy petition was terminated, without discharge, on October 15, 2016. During the Relevant Period, Johnson was not an associated person of a United States financial institution, registered dealer, insurance company, financial holding company, or investment bank holding company, as defined by the Act. Johnson was registered with the Financial Industry Regulatory Authority, Inc. ("FINRA") as a securities broker from April 2007 through November 2012. In August 2013, FINRA permanently barred Johnson from acting as a broker or otherwise associating with firms that sell securities to the public. Johnson has never been registered with the Commission in any capacity.

10. Defendant **Marisa E. Johnson** is married to Johnson and resides in Chino, California. Marisa Johnson is identified as the sole owner of 100% of Capitol Equity in Exhibit A to Capitol Equity's Operating Agreement. Marisa Johnson is also identified as the "President" of Capitol Equity in account opening documents

that Defendants submitted to OANDA Corporation ("OANDA") for the purpose of opening a non-pooled forex trading account in the name of Capitol Equity FX. As set forth below, Marisa Johnson opened additional forex trading accounts used in Defendants' fraudulent scheme and, with Johnson, controlled bank accounts into which funds misappropriated from pool participants were transferred. On October 14, 2015, Marisa Johnson, jointly with Johnson, filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Central District of California, *In re Robert L Johnson and Marisa E Johnson*, Case No. 6:15-bk-20060-MJ (Bankr. C.D. Cal. 2015). Marisa Johnson received a bankruptcy discharge on September 6, 2016. Marisa Johnson has never been registered with the Commission in any capacity.

## IV. FACTS

### A. <u>The Fraudulent Scheme</u>

11. During the Relevant Period, Defendants fraudulently solicited and received at least $1,735,750 from not less than 10 pool participants. Defendants knowingly and falsely represented to actual and prospective pool participants that all funds were pooled and used to trade commodity futures and forex on behalf of the pool; that Johnson was an "expert" forex trader; that Defendants' trading for the pool was profitable; and that pool participants' Capitol Equity participation or partnership units were earning significant gains. All of these representations were false.

12. To execute the fraudulent scheme, Johnson, as an agent or employee of Capitol Equity, solicited friends and acquaintances residing in California, in person, by word-of-mouth, by email, by the Internet, and by use of the mails and/or other means or instrumentalities of interstate commerce, to transfer funds into bank accounts in the name of, and under the control of, the Defendants. In these bank accounts, Defendants commingled their own personal funds with the funds of pool participants.

13. Between May 2012 and December 2013, before the formation of Capitol Equity, Johnson and Maria Johnson solicited and received funds from at least three pool participants. After forming Capitol Equity on April 14, 2014, Defendants began doing business as Capitol Equity and continued to fraudulently solicit and pool funds for trading commodity futures and leveraged or margined forex contracts.

14. In April 2014, Defendants registered the domain name *capitolequityfx.com* and created a public website at that domain (the "Capitol Equity Website"). Defendants used the Capitol Equity Website to advertise Capitol Equity as an investment management company offering a "program" that drew on 18 years of experience to provide a "systematic approach trading a diversified portfolio of futures and forex markets." According to the Capitol Equity Website, Defendants' "model measures the expansion and contraction of daily volatility for multiple commodities . . . with the objective to limit losses on a per trade basis while allowing the system to profit from short-term price movements."

15. After forming Capitol Equity, Defendants required some pool participants to sign a "Subscription Agreement," which provided that pool participants acquired "limited partnership interests" in Capitol Equity in exchange for having "transferred cash by wire or by check" or having provided "marketable securities" to Capitol Equity. Johnson executed the Subscription Agreements on behalf of Capitol Equity.

16. Defendants also required some or all new pool participants to enter into an "Investment Management Agreement," which provided that Capitol Equity would be retained by the pool participant "to manage all of [the pool participant's] assets on a discretionary basis . . . ." Section 5 of the Investment Management Agreement provided that Capitol Equity, the "Investment Manager," "shall have full power to invest and reinvest the [pool participant's assets] in such securities and other investments as the Investment Manager in its discretion shall consider to be in the best interest of the [pool participant]." Johnson executed the Investment Management Agreements as the "President" of Capitol Equity, and identified himself as the "Investment Manager" of Capitol Equity in Schedule B to the Investment Management Agreements.

17. As a result of Defendants' solicitations throughout the Relevant Period, Defendants accepted at least $1,735,750 from at least 10 participants. The majority of these funds - $861,625 - was deposited into a bank account at JP Morgan Chase Bank ("JPMC") *5205 held in the name of Capitol Equity. An additional $130,000

of participants' funds was deposited into JPMC bank account *6733 (in the names of Johnson and Marisa Johnson), and $744,125 of participants' funds was deposited into JPMC account *1260 (in the name of Johnson).

18. Of the at least $1,735,750 total funds Defendants collected during the Relevant Period, Defendants returned only approximately $172,000 to some pool participants in the nature of a "Ponzi" scheme.

19. The commodity pool Defendants operated was not an eligible contract participant ("ECP") as that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012).

**B. <u>Operation of the Pool</u>**

20. During the Relevant Period, Capitol Equity acted as a CPO by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures and off-exchange leveraged or margined forex contracts, without being registered with the Commission as a CPO. At no time did Defendants operate the pool as an entity cognizable as a legal entity separate from that of the pool operator, nor did the Defendants ever open a pooled trading account for the benefit of participants.

21. During the Relevant Period, Johnson and Marisa Johnson acted as APs of a CPO by soliciting funds, securities, or property for participation in the

commodity pool operated by Capitol Equity, without being registered with the Commission as APs of a CPO.

22. During the Relevant Period, Marisa Johnson was identified as the sole owner of 100% of Capitol Equity in Exhibit A to Capitol Equity's Operating Agreement. As the 100% sole owner of Capitol Equity, Marisa Johnson was solely responsible for supervising Johnson with respect to his actions as an agent or employee of Capitol Equity.

## C. Forex Trading Accounts

23. During the Relevant Period, Defendants at various times held forex trading accounts at Forex Capital Markets LLC ("FXCM"), Interactive Brokers LLC ("Interactive Brokers"), and OANDA. FXCM, Interactive Brokers, and OANDA are all forex dealers that are registered with the Commission as Futures Commission Merchants. None of these accounts were pooled accounts held in the name of a commodity pool.

24. On or about May 21, 2012, Defendants opened Interactive Brokers forex trading account *559 in the name of Johnson. On information and belief, Defendants controlled Interactive Brokers account *559.

25. On or about March 18, 2013, Defendants opened FXCM forex trading account *801 in the name of Capitol Equity, with Marisa Johnson identified as the signatory. No funds were deposited into FXCM forex trading account *801, and no

trades were made. On information and belief, Defendants controlled FXCM account *801.

26. On or about November 24, 2013, Defendants opened Interactive Brokers forex trading account *651 in the name of Marisa Johnson. On information and belief, Defendants controlled Interactive Brokers account *651.

27. On May 30, 2014, Defendants opened OANDA forex trading account *282 in the name of Capitol Equity. On information and belief, Defendants controlled OANDA account *282.

28. On July 25, 2014, Interactive Brokers forex trading account *651 was closed. Thereafter, Defendants attempted to re-open the trading account. On December 26, 2014, Interactive Brokers contacted Marisa Johnson by email to inform her that the Interactive Brokers Compliance Department declined to re-open trading account *651.

29. Of the at least $1,735,750 million collected from pool participants during the Relevant Period, Defendant transferred approximately $1.19 million into the Interactive Brokers and OANDA trading accounts.

30. A total of approximately $622,000 was transferred from the Interactive Brokers and OANDA trading accounts back to bank accounts controlled by Johnson and Marisa Johnson.

31. During the Relevant Period, Defendants' forex trading in the Interactive Brokers and OANDA trading accounts sustained net realized losses of approximately $728,000.

**D. Structure of the Pool and Commingling**

32. At no time did Capitol Equity, as the CPO, operate the pool as an entity cognizable as a legal entity separate from Capitol Equity. As a result, at no time were any funds received from pool participants received in the pool's name because a separate pool was never created.

33. During the Relevant Period, Defendants commingled pool participants' funds with the funds of Johnson and Marisa Johnson. On numerous occasions, Defendants transferred pool participants' funds to Johnson's and Marisa Johnson's personal bank accounts, including JPMorgan Chase accounts *1260 (held in the name of Johnson) and *6733 (in the names of Johnson and Marisa Johnson) and Bank of America account *2735 (in the names of Johnson and Marisa Johnson).

34. From September 2013 through March 2014, Johnson and/or Marisa Johnson deposited $57,806 in proceeds from a homeowners insurance claim and a $4,678 tax refund from the U.S. Treasury into their Bank of America account *2735, where their personal funds were commingled with funds received from pool participants.

**E. Misrepresentations and Omissions of Material Facts**

35. During the Relevant Period, Defendants knowingly made numerous fraudulent misrepresentations in person, via email, via telephone, and via the Capitol Equity Website to attract pool participants, including that:

a. all pool participant funds would be pooled to trade commodity futures and forex and that returns would be derived from the pool's trading profits;

b. pool participant funds would be used to execute a technical trading strategy based on "pips," which Johnson described as small changes in the exchange rate between the U.S. Dollar and the Euro;

c. Capitol Equity provided a "systematic approach trading a diversified portfolio of futures and forex markets" and used a "model" that "measures the expansion and contraction of daily volatility for multiple commodities . . . with the objective to limit losses on a per trade basis while allowing the system to profit from short-term price movements.";

d. Defendants drew on 18 years of successful experience trading commodity futures and forex;

e. Johnson was an "expert" forex trader;

f. Johnson invested $400,000 of his own funds into the Capitol Equity pool;

g. the Capitol Equity pool held as much as $3 million in its trading accounts; and

h. the Capitol Equity pool was consistently profitable during the Relevant Period.

36. During the Relevant Period, Defendants knowingly made numerous material omissions to attract pool participants, including by failing to disclose that:

a. the Capitol Equity pool was suffering significant net trading losses during the Relevant Period;

b. Defendants misappropriated pool participants' funds for their own use;

c. Defendants were not registered with the Commission in any capacity, as required by federal law;

d. Defendants commingled customer funds with Defendants' own funds in violation of federal law;

e. FINRA had permanently barred Johnson from acting as a broker or associating with firms that sell securities to the public;

f. purported "returns" paid to some pool participants were in fact the principal deposits of other pool participants and were not generated by profitable forex trading.

37. By way of example, on July 9, 2014, using the email address rob@*****.com, Johnson responded to an email message from pool participant K.P.

inquiring whether K.P.'s Capitol Equity returns would "remain at 25% annually" and whether K.P. "can put more in as well?" Johnson responded, "Your return will go higher than 25% and yes you can and should put more in if possible. I am getting a 50-50 split that's the only way to do the fund. So your returns can go and will go higher." Johnson knowingly made these false statements and omitted material facts for the purpose of luring pool participant K.P. to deposit additional funds into the Capitol Equity pool.

38. On December 9, 2014, using the email address rob@*****.com, Johnson sent an email message to pool participant R.H., stating that Capitol Equity "is my hedge fund I started over 2 years ago I'm the primary trader behind the fund." Johnson further wrote, "I only trade EUR/USD that's it! I've become an expert at it and I trade everyday [sic] with my mentor who has been doing it for over 30 years . . . ." Johnson knowingly made these false statements and omitted material facts for the purpose of enticing pool participant R.H. to deposit funds into the Capitol Equity pool.

39. On February 12, 2015, using the email address rob@*****.com, Johnson sent an email to pool participant H.A., stating that Johnson had been trading forex contracts "for a long time and you have nothing to worry about" with respect to funds deposited into the Capitol Equity pool. Johnson knowingly made these false statements and omitted material facts for the purpose of causing pool participant H.A. to deposit funds into the Capitol Equity pool.

40. To perpetuate their fraudulent scheme and to solicit additional pool participants, Defendants also provided pool participants and prospective pool participants with false reports and records in the form of fake pool performance statements, fake OANDA fxTrade account statements, and fake individual account statements. These documents falsely represented that Defendants engaged in profitable forex trading with pool participants' funds and that pool participants' Capitol Equity accounts were growing as a result of Defendants' forex trading.

41. Defendants knowingly provided pool participants with fake pool performance statements for the purpose of luring victims to the Capitol Equity pool. For example, Defendants provided pool participants and prospective pool participants with pool performance statements falsely reflecting that Capitol Equity had generated enormous trading profits in calendar year 2013, based on the following fabricated monthly returns:

a. 7.65% in January;

b. 32.14% in February;

c. 7.91% in March;

d. 6.38% in April;

e. 12.16% May;

f. 35.48% in June;

g. 9.64% in July;

h. 5.51% in August;

i. 16.89% in September;

j. 18.79% October;

k. 14.37% in November; and

l. 10.76% in December.

42. Defendants provided pool participants with similar fabricated pool performance statements for the years 2014 and 2015.

43. Defendants also provided fake OANDA fxTrade account statements to pool participants that mirrored the form of actual OANDA fxTrade account statements and were designed to mislead pool participants. The fake OANDA fxTrade account statements falsely inflated the balances held in Capitol Equity's trading accounts. These fabricated statements were made to appear as if they had been issued by OANDA for Capitol Equity's account *282, and falsely represented that the account held far more funds than it did in reality. In fact, the fake statements overstated balances by millions of dollars.

44. For example, Johnson used email to provide pool participants with a purported OANDA fxTrade account statement for December 2014 which falsely reflected a Closing Balance and Closing NAV (net asset value) of $1,942,398.96. Capitol Equity's actual OANDA statement reveals that Capitol Equity's account *282 had a closing balance of $0.01 as of December 31, 2014.

45. The fake OANDA fxTrade account statement for December 2014 falsely reflected Closing Unrealized profits of $324,000.00. Capitol Equity's actual

OANDA statements reflect that Capitol Equity's account *282 did not trade and made no profits during December 2014.

46. During the Relevant Period, Defendants also provided pool participants with fake account statements purportedly reflecting the value of pool participants' individual "accounts" with Capitol Equity. These individual account statements falsely represented that balances held in the pool on behalf of the pool participant had increased in value as a result of profitable forex trading by Defendants. In reality, pool participants accrued no profits and suffered total or near total losses of their deposits.

**F. <u>Misappropriation of Pool Participants' Funds</u>**

47. While Defendants represented to pool participants that all pool funds would be used to trade commodity futures or forex, only $1,190,000 of the $1,735,750 collected from pool participants was transferred to Defendants' personal trading accounts, none of which was maintained for the benefit of the pool. Additionally, small amounts of funds were consistently transferred from the trading accounts back into the personal bank accounts of Johnson and Marisa Johnson.

48. During the Relevant Period, instead of pooling and trading pool participants' funds in commodity futures and forex as promised, Defendants misappropriated all of the pool participants' funds for unauthorized purposes, including to pay their own personal expenses, and for the benefit of Johnson and Marisa Johnson's own trading accounts.

49. Johnson and Marisa Johnson used pool participants' funds to pay their own personal expenses including mortgage payments, groceries, dining, gym memberships, luxury clothing, and massages. Defendants did not disclose these unauthorized uses of pool participants' funds to pool participants or prospective pool participants.

50. Defendants also misappropriated pool participants' funds by transferring pool participants' funds to Johnson and to Marisa Johnson via wire transfers, check payments, and cash withdrawals. Defendants did not disclose these unauthorized uses of pool participants' funds to pool participants or prospective pool participants.

51. Defendants also used pool participants' funds to pay purported profits to other pool participants in order to create the illusion that the Capitol Equity pool was profitable, when in fact it was not. Defendants did not disclose the nature of these payments to pool participants or prospective pool participants.

## V. STATUTORY AND REGULATORY VIOLATIONS

### COUNT I

### FRAUD IN CONNECTION WITH COMMODITY FUTURES
### Violations of 7 U.S.C. § 6b(a)(1)(A)-(C)

52. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

53. 7 U.S.C. § 6b(a)(1)(A)-(C) (2012) makes it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, [ . . . ] that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

54. As described herein, Defendants violated U.S.C. § 6b(a)(1)(A)-(C) (2012) by cheating or defrauding, or attempting to cheat or defraud, other persons; issuing or causing to be issued false statements and records; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the commodity futures transactions alleged herein, by, among other things: (i) fraudulently soliciting pool participants and prospective pool participants by making

material misrepresentations and omissions about Defendants' commodity futures and forex trading strategy, Defendants' trading abilities and profits, and Defendants' use of deposited funds; (ii) misappropriating pool participants' funds; and (iii) fabricating false records in the form of fake pool performance statements, fake OANDA fxTrade account statements, and fake individual account statements.

55. Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices.

56. Defendants engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

57. Johnson and Marisa Johnson controlled Capitol Equity, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Capitol Equity to commit the acts and/or omissions alleged herein. Therefore, pursuant to 7 U.S.C. § 13c(b) (2012), Johnson and Marisa Johnson are liable for Capitol Equity's violations of 7 U.S.C. § 6b(a)(1)(A)-(C) (2012).

58. Johnson and Marisa Johnson acted within the course and scope of their employment, agency, or office with Capitol Equity. Pursuant to 7 U.S.C. § 2(a)(1)(B) (2012), and 17 C.F.R. § 1.2 (2016), Capitol Equity is liable as principal for Johnson's and Marisa Johnson's violations of 7 U.S.C. § 6b(a)(1)(A)-(C) (2012).

59. Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)-(C) (2012).

**COUNT II**

**FRAUD IN CONNECTION WITH FOREX TRANSACTIONS**
**Violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)**

60. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

61. 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) makes it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, [ . . . ] that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or

> in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

62. 7 U.S.C. § 2(c)(2)(C)(iv) (2012) states that 7 U.S.C. § 6b (2012) applies to the forex transactions, agreements, or contracts offered by Defendants as if they were contracts of sale of a commodity for future delivery.

63. 17 C.F.R. § 5.2(b) (2016) makes it unlawful:

> for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) To cheat or defraud or attempt to cheat or defraud any person; (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

64. As described herein, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) and 17 C.F.R. § 5.2(b) (2016) by cheating or defrauding, or attempting to cheat or defraud, other persons; issuing or causing to be issued false statements and records; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the off-exchange leveraged or margined forex

transactions alleged herein, by, among other things: (i) fraudulently soliciting pool participants and prospective pool participants by making material misrepresentations and omissions about Defendants' forex trading strategy, Defendants' trading abilities and profits, and Defendants' use of deposited funds; (ii) misappropriating pool participants' funds; and (iii) fabricating false records in the form of fake pool performance statements, fake OANDA fxTrade account statements, and fake individual account statements, all in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) and 17 C.F.R. § 5.2(b) (2016).

65. Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices.

66. Defendants engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

67. Johnson and Marisa Johnson controlled Capitol Equity, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Capitol Equity to commit the acts and/or omissions alleged herein. Therefore, pursuant to 7 U.S.C. § 13c(b) (2012), Johnson and Marisa Johnson are liable for Capitol Equity's violations of 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) and 17 C.F.R. § 5.2(b) (2016).

68. Johnson and Marisa Johnson acted within the course and scope of their employment, agency, or office with Capitol Equity. Pursuant to 7 U.S.C. §

2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2016), Capitol Equity is liable as principal for Johnson's and Marisa Johnson's violations of 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) and 17 C.F.R. § 5.2(b) (2016).

69. Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) and 17 C.F.R. § 5.2(b) (2013).

## COUNT III

**FRAUD BY A COMMODITY POOL OPERATOR**
**Violations of 7 U.S.C. § 6o(1)(A) and (B) and 17 C.F.R. § 4.41(a)**

70. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

71. 7 U.S.C. § 6o(1) (2012) makes it unlawful for a CPO to:

> by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly – (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

72. 17 C.F.R. § 5.4 (2016) states that 17 C.F.R. §§ 4.1 – 4.41 (2016) applies to any person required to register as a forex CPO pursuant to 17 C.F.R. §§ 5.1 – 5.25 (2016).

73. 17 C.F.R. § 4.41(a) (2016) makes it unlawful for any CPO, or any principal thereof, to publish, distribute, or broadcast, whether by electronic media or otherwise, any report, letter, circular, memorandum, publication, writing, advertisement, or other literature or advice that: (1) employs any device, scheme, or artifice to defraud any participant or client or prospective participant or client; or (2) involves any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

74. As alleged herein, during the Relevant Period, Capitol Equity acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures and off-exchange leveraged or margined forex contracts.

75. Capitol Equity violated 7 U.S.C. § 6o(1)(A) and (B) (2012), and 17 C.F.R. § 4.41(a) (2016), in that it employed or is employing a device, scheme, or artifice to defraud actual and prospective pool participants or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon pool participants or prospective pool participants, including without limitation: misappropriation of participants' funds, issuing false account

statements, misrepresenting and/or omitting material facts in solicitations and communications with participants, and acting as a CPO without registering as such as required by federal law.

76. Johnson and Marisa Johnson controlled Capitol Equity, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Capitol Equity to commit the acts and/or omissions alleged herein. Therefore, pursuant to 7 U.S.C. § 13c(b) (2012), Johnson and Marisa Johnson are liable for Capitol Equity's violations of 7 U.S.C. § 6o(1)(A) and (B) (2012) and 17 C.F.R. § 4.41(a) (2016).

77. Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6o(1)(A) and (B) (2012) and 17 C.F.R. § 4.41(a) (2016).

## COUNT IV

## PROHIBITED ACTIVITIES BY A COMMODITY POOL OPERATOR
## Violation of 17 C.F.R. § 4.20(a)(1), (b), and (c)

78. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

79. 17 C.F.R. § 4.20(a)(1) (2016) provides, "Except as provided in paragraph (a)(2) of this section, a commodity pool operator must operate its pool as an entity cognizable as a legal entity separate from that of the pool operator."

80. As set forth above, during the Relevant Period, Capitol Equity acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures and off-exchange leveraged or margined forex contracts.

81. During the Relevant Period, Capitol Equity, in operating an investment trust, syndicate, or similar form of enterprise for the purpose of, among other things, trading in commodity futures and off-exchange leveraged or margined forex contracts, did not operate the pool as an entity cognizable as a legal entity separate from that of Capitol Equity, the pool operator.

82. 17 C.F.R. § 4.20(b) (2016) provides:

> All funds, securities or other property received by a commodity pool operator from an existing or prospective pool participant for the purchase of an interest or as an assessment (whether voluntary or involuntary) on an interest in a pool that it operates or that it intends to operate must be received in the pool's name.

83. As set forth above, during the Relevant Period, Capitol Equity, by operating an investment trust, syndicate, or similar form of enterprise for the purpose of, among other things, trading in commodity futures and off-exchange leveraged or margined forex contracts, failed to operate the pool as an entity cognizable as a legal

entity separate from Capitol Equity, and received funds, securities or other property from existing or prospective pool participants for the purchase of an interest in the pool without receiving same in the pool's name.

84. 17 C.F.R. § 4.20(c) (2016) provides, "No commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."

85. As set forth above, during the Relevant Period, Capitol Equity commingled pool participants' funds by failing to maintain separation between Capitol Equity's funds and the pool's funds, by commingling pool funds with the personal funds of Johnson and Marisa Johnson, and by placing pool funds into the personal bank and trading accounts of Johnson and Marisa Johnson.

86. Johnson and Marisa Johnson controlled Capitol Equity, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Capitol Equity to commit the acts and/or omissions alleged herein. Therefore, pursuant to 7 U.S.C. § 13c(b) (2012), Johnson and Marisa Johnson are liable for Capitol Equity's violations of 17 C.F.R. § 4.20(a)(1), (b), (c) (2016).

## COUNT V

**FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR**
**Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1)**
**and 17 C.F.R. § 5.3(a)(2)(i)**

87. The allegations in the preceding paragraphs are re-alleged incorporated herein by reference.

88. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012) makes it unlawful for any person, unless registered in such capacity as the Commission shall determine, to operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant (as defined by 7 U.S.C. § 1(18) (2012)) in connection with agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) (2012) (leveraged or margined forex transactions), entered into with or to be entered into with a person who is not described in item (aa), (bb), (ee), or (ff) of 7 U.S.C. § 2(c)(2)(B)(i)(II) (2012) (describing counterparties such as registered futures commission merchants).

89. As set forth above, during the Relevant Period, Capitol Equity acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures and off-exchange leveraged or margined forex contracts.

90. 7 U.S.C. § 6m(1) (2012) makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

91. During the Relevant Period, Capitol Equity engaged in the acts and practices described above using the mails and instrumentalities of interstate commerce, including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices, while failing to register with the Commission, in violation of 7 U.S.C. § 6m(1) (2012).

92. 17 C.F.R. § 5.3(a)(2)(i) (2016) requires any CPO engaged in retail forex transactions to register with the Commission. 17 C.F.R. § 5.1(d)(1) (2016) defines a CPO as any person who "operates or solicits funds, securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions."

93. During the Relevant Period, Capitol Equity acted as a CPO because it solicited funds, securities, or property for a pooled investment vehicle that was not an eligible contract participant and engaged in off-exchange leveraged or margined forex transactions, in violation of 17 C.F.R. § 5.3(a)(2)(i) (2016).

94. During the Relevant Period, Capitol Equity was not exempt from registering as a CPO.

95. Johnson and Marisa Johnson controlled Capitol Equity, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Capitol Equity to commit the acts and/or omissions alleged herein. Therefore,

pursuant to 7 U.S.C. § 13c(b) (2012), Johnson and Marisa Johnson are liable for Capitol Equity's violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1) (2012), and 17 C.F.R. § 5.3(a)(2)(i) (2016).

## COUNT VI

## FAILURE TO REGISTER AS ASSOCIATED PERSONS OF A COMMODITY POOL OPERATOR
## Violation of 7 U.S.C. § 6k(2) and 17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii)

96. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

97. 7 U.S.C. § 6k(2) (2012) and 17 C.F.R. § 5.3(a)(2)(ii) (2016) require registration with the Commission for any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged.

98. 7 U.S.C. § 6k(2) (2012) also makes it unlawful for any CPO to permit any person not registered with the Commission to become or remain associated with the CPO in any capacity described in the preceding paragraph when the CPO knew or should have known that such person was not registered with the Commission or that such registration had expired, been suspended (and the period of suspension has not expired), or been revoked.

99. 17 C.F.R. § 3.12 (2016) prohibits any person from being an AP of a CPO unless that person is registered with the Commission as an AP of the sponsoring CPO.

100. 17 C.F.R. § 5.1(d)(2) (2016) defines an AP, for purposes relating to forex transactions, as any natural person associated with a CPO (as that term is defined in 17 C.F.R. § 5.1(d)(1) (2016)) as a partner, officer, employee, consultant, or agent that is involved in the solicitation of funds, securities, or property, or the supervision of any such person so engaged.

101. 17 C.F.R. § 5.3(a)(2)(ii) (2016) requires any AP of a CPO engaged in retail forex transactions to register with the Commission.

102. During the Relevant Period, Johnson and Marisa Johnson, who have never been registered with the Commission in any capacity, acted as APs of a CPO by: (i) soliciting funds, securities, or property for participation in a commodity pool operated by Capitol Equity and/or supervised persons so engaged, and (ii) operating or soliciting funds, securities, or property for the Capitol Equity pool, which was not an eligible contract participant, in connection with commodity futures and off-exchange leveraged or margined forex transactions.

103. Johnson and Marisa Johnson acted within the course and scope of their employment, agency, or office with Capitol Equity. Pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2016), Capitol Equity is liable as principal for

Johnson's and Marisa Johnson's violations of 7 U.S.C. § 6k(2) (2012) and 17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii) (2016).

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by 7 U.S.C. § 13a-1 (2012), and pursuant to the Court's inherent equitable powers, enter:

A. an order finding Defendants liable for violating 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(1)(A)-(C), 6b(a)(2)(A)-(C), 6k(2), 6m(1), 6o(1)(A)-(B) (2012), and 17 C.F.R. §§ 3.12, 4.20(a)(1), (b), and (c), 4.41(a), 5.2(b), 5.3(a)(2)(i)-(ii) (2016).

B. an order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with them, including any of their successors, from, directly or indirectly:

(i) trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § la(40) (2012));

(ii) entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3(yy) (2016)) for their own personal account or for any account in which they have a direct or indirect interest;

(iii) having any commodity interests traded on their behalf;

(iv) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(v) soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vi) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring registration or exemption from registration with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9) (2016);

(vii) acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9) (2016);

(viii) engaging in any business activities related to commodity interests;

C. an order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

D. an order directing Defendants, as well as any successors thereof, to make full restitution to every person or entity whose funds they received or caused another

person or entity to receive as a result of acts and practices that constituted violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E. an order directing Defendants, as well as any successors thereof, to provide a full accounting of all pool participant funds they have received during the Relevant Period as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

F. an order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any pool participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations, as described herein;

G. an order directing Defendants to pay a civil monetary penalty for each violation of the Act and Regulations described herein, plus post-judgment interest, in the amount of the higher of: 1) $170,472 for each violation of the Act and Regulations Defendants committed; or 2) triple the monetary gain to Defendants for each violation of the Act and Regulations, plus post-judgment interest;

H. an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I. such other and further relief as the Court deems proper.

Dated: April 19, 2017

Respectfully submitted,

U.S. COMMODITY FUTURES
TRADING COMMISSION

/s/ James H. Holl, III

JAMES H. HOLL, III. CA Bar. No. 177885
DANIEL J. GRIMM, *pro hac vice pending*
TIMOTHY J. MULREANY, *pro hac vice pending*
Attorneys for Plaintiff
U.S. COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000
jholl@cftc.gov
dgrimm@cftc.gov
tmulreany@cftc.gov